IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:18-CV-00445-M

| | |
|---|---|
| **Anthony Blue**, Administrator of the Estate of James E. Blue, Sr., <br><br> Plaintiff, <br><br> v. <br><br> **Randy L. Hill**, et al. <br><br> Defendants. | **Order** |

      The parties return to the court for a second time over Plaintiff Anthony Blue's request that Defendant Ruan Transport Corp. provide information on prior instances of injuries or accidents involving a Ruan driver. The court previously found this information to be relevant and proportional to the needs of the case. Ruan now claims, for the first time, that it cannot produce the requested information without violating the California Constitution and confidentiality provisions in various settlement agreements.

      Ruan's arguments are unpersuasive. It has not shown that the information called for implicates a privacy interest protected under California law. And the settlement agreements it relies on to support its argument only protect the terms of the settlement agreements, which is not what the interrogatory at issue requires it to produce. But, out of an abundance of caution, the court will enter a protective order limiting the use of this information to the purposes of this litigation. Thus, the court will grant both Blue's Motion to Compel (D.E. 72) and Ruan's Motion for Protective Order (D.E. 77).

## I. Background

In November 2017, James Blue, Sr. was driving a pickup truck on I-85 when he slowed and turned on his hazard lights. Compl. ¶¶ 21, 26, D.E. 1–5. Randy Hill was driving a tractor trailer; Ruan owned the cab and Airgas owned the trailer he was pulling. *Id.* ¶ 22. Hill struck Blue, Sr.'s truck from the rear, causing him injuries, which led to his death. *Id.* ¶¶ 26–27. Anthony Blue sued Defendants on behalf of Blue Sr.'s Estate.

Blue claims that the Defendants are responsible for the traffic accident that led to his father's death. During discovery, he sought information from Ruan about prior instances when the actions or omissions of a Ruan driver caused a person to be injured or killed. For each instance, Blue requests the case caption (or the names of parties, the jurisdiction, and the case number), the circumstances of the suit or claim, and the disposition of the claim. D.E. 75–1. Ruan refused to produce this information and Blue filed a motion to compel. The court granted the motion and required Ruan to produce the requested information. D.E. 64.

But Ruan has not fully complied with the court's order. It claims that it cannot turn over the requested information without violating the California Constitution and the terms of various settlement agreements the company has entered into. D.E. 75 at 2. Blue filed another motion to compel asking the court to require Ruan to turn over the information. D.E. 72. Ruan, in turn, filed a motion for a protective order that sought to relieve it from turning over all of the requested information or limiting its dissemination. D.E. 77.

## II. Discussion

This dispute requires the court to interpret the protections the people of California have enacted to protect their privacy rights[1] and the terms of settlement agreements between Ruan and

---

[1] The court assumes without deciding that a provision in a state constitution can, in theory, restrict a party's ability to comply with an order issued by a federal court in another state.

2

various claimants. None of these documents provide a basis for Ruan to withhold the information Blue seeks. Ruan has not established that the California Constitution prevents it from responding because it has not shown that anyone has a recognized privacy interest in the requested information. And divulging the requested information would not violate the terms of Ruan's settlement agreements because those agreements only protect the terms of the settlement agreement, which is not the type of information the interrogatory calls for. Thus, the court will grant Blue's motion to compel. But the court will also grant Ruan's motion for a protective order and limit the further use of this information.

### A. California Privacy Law

The people of California believe that the right to privacy is so important that they have explicitly included it among the inalienable rights protected in the state constitution. Cal. Const. Art. 1, § 1. The right "prevents government and business interests from [1] collecting and stockpiling unnecessary information about us and from [2] misusing information gathered for one purpose in order to serve other purposes or to embarrass us." *Hill* v. *Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 36, 865 P.2d 633, 654 (1994) (brackets in original). But "the right to privacy is not absolute." *Id.* at 35, 865 P.2d at 654.

The California Supreme Court has established a three-part test to assess whether a disclosure would violate the right to privacy. First, a court must consider whether the information implicates "a specific, legally protected privacy interest." *Id.* "[P]rivacy interests do not encompass all conceivable assertions of individual rights" and thus they are "best assessed separately and in context." *Id.*

Under California law, there are two types of legally protected privacy interests. First, there is informational privacy, which "preclud[es] the dissemination or misuse of sensitive and

3

confidential information[.]" *Id.* The California Supreme Court has explained that "[a] particular class of information is private when well-established social norms recognize the need to maximize individual control over its dissemination and use to prevent unjustified embarrassment or indignity." *Id.* In assessing whether social norms require protecting a class of information, the court should consider "the usual sources of positive law governing the right to privacy—common law development, constitutional development, statutory enactment, and the ballot arguments accompanying the Privacy Initiative." *Id.* at 36, 865 P.2d at 654.

The second type of privacy the amendment protects is autonomy privacy. This type of privacy protests a person's "interest[] in making intimate personal decisions or conducting personal activities without observation, intrusion, or interference[.]" *Id.* at 35, 865 P.2d at 654. The purpose of protecting autonomy privacy is to "safeguard[] certain intimate and personal decisions from government interference in the form of penal and regulatory laws." *Id.* at 36, 865 P.2d at 654.

After considering whether the information is subject to a legally recognized privacy interest, the court must consider whether a person has "a reasonable expectation of privacy" in that information. *Id.*, 865 P.2d at 655. A reasonable expectation of privacy "is an objective entitlement founded on broadly based and widely accepted community norms." *Id.* at 37, 865 P.2d at 655. It considers "customs, practices, and physical settings surrounding particular activities"; whether a person received notice before a disclosure; and with whether a person had "opportunities to consent voluntarily to activities impacting privacy interests[.]" *Id.*

Finally, the court must assess whether disclosure of the requested information would cause a serious invasion of the privacy interest. *Id.* A serious invasion is one that would "constitute an egregious breach of the social norms underlying the privacy right." *Id.*

4

Ruan refers the court to two California Supreme Court cases to support its position, *Valley Bank of Nevada* v. *Superior Court*, 15 Cal. 3d 652, 542 P.2d 977 (1975), and *Pioneer Electronics (USA), Inc.* v. *Superior Court*, 40 Cal. 4th 360, 150 P.3d 198 (2007). But these cases do not establish that the California Constitution prohibits disclosure of the information Blue seeks.

*Valley Bank* involved a dispute over a request for bank records. The California court's analysis focused on whether bank customers had a reasonable expectation of privacy in their bank records.[2] In *Valley Bank*, unlike here, the California Supreme Court had "recently discussed at length the 'reasonable expectation of privacy' which a bank customer entertains with respect to financial information disclosed to his bank." *Id.* at 656, 542 P.2d at 979. The court also noted that it was "the general rule in other jurisdictions that a bank impliedly agrees not to divulge confidential information without the customer's consent unless compelled by court order." *Id.* at 657, 542 P.2d at 979. Ruan has presented no evidence that similar protections apply to the litigation-related information Blue asks for.

The second case Ruan relies on is *Pioneer Electronics (USA), Inc.* v. *Superior Court*, 40 Cal. 4th 360, 150 P.3d 198 (2007). In *Pioneer Electronics*, the court confronted whether the California Constitution prohibited a party from turning over the name, address, and telephone number of people who had filed complaints about defective DVD players. *Id.* at 354, 150 P.3d at 200. On appeal, the appellate courts considered whether "Pioneer's former customers had a constitutional privacy right to object to Pioneer disclosing their identifying information[.]" *Id.* at 366, 150 P.3d at 201. Although the Supreme Court found that it was not an abuse of discretion for

---

[2] *Valley Bank* does not discuss the two remaining *Hill* factors. This is not unexpected as *Valley Bank* predates *Hill* by almost two decades.

the trial court to require notice to the customers[3] before turning over the information, it explained that the former customers did not have a "reasonable expectation that the information would be kept private unless they affirmatively consented[.]" *Id.* at 372, 150 P.3d at 521 (italics removed).

Unlike in *Valley Bank*, Ruan has not identified a statutory or common law basis providing confidentiality to the information Blue has asked for. And even if it did, *Pioneer Electronics* establishes that there is no reasonable expectation of privacy in this type of information. The court also does not believe that turning over this type of information would cause a serious invasion of privacy. There is no indication that the disclosure will allow Blue to contact these individuals directly. To the contrary, Blue has represented to the court that he wants this information to contact counsel involved in the various matters. So the court will not allow Ruan to withhold this information because of the privacy provision in the California Constitution.

### B. Settlement Agreement Terms

Next, the court turns to whether disclosing the requested information would require Ruan to violate the terms of settlement agreements it has entered. There are two types of settlement agreements at issue—those resolved before a party sued and those resolved after a suit has been filed. But neither type of settlement agreement restricts the disclosure of the information Blue asks for.

Ruan requires parties resolving matters before going to court to execute a settlement agreement containing a confidentiality clause. The clause requires the parties "to keep the terms of the settlement between them strictly confidential and not to disclose the terms of the Agreement

---

[3] Ruan's brief implies that the *Pioneer Electric* court would not have allowed the disclosure unless individuals received a chance to object to the disclosure. Mem. in Supp. of Mot. for Prot. Order at 7. But the question was whether the trial court abused its discretion by requiring notice. The Supreme Court held that it did not.

6

Case 5:18-cv-00445-M   Document 82   Filed 07/13/20   Page 6 of 9

to any other person[.]" Mem. in Supp. of Mot. for Prot. Order at 8, D.E. 78. But parties "may respond to a validly issued court order after each Party has had the opportunity to be heard." *Id*.

The effect of the confidentiality provision on Ruan's ability to respond depends on what "terms" means in the context of the agreement. Under North Carolina law, settlement agreements "are governed by general principles of contract law." *Chappell* v. *Roth*, 353 N.C. 690, 692, 548 S.E.2d 499, 500 (2001). Ruan has not shown that the settlement agreements gave the word "terms" a defined meaning. So the court will give the word a meaning consistent with its "use[] in ordinary speech, unless the context clearly requires otherwise." *Wachovia Bank & Tr. Co.* v. *Westchester Fire Ins. Co.*, 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970).

Sources on the ordinary meaning of language all point to a similar definition of the word "terms." Black's Law Dictionary explains that the word means, "[p]rovisions that define an agreement's scope; conditions or stipulations[.]" Term, Black's Law Dictionary (11th ed. 2019). *Accord* Term, Oxford English Dictionary (3d ed. Mar. 2017) ("A condition under which something may be done, settled, agreed, or granted; a stipulated requirement or limitation."). Claimants names, the general circumstances involved in the dispute, and the outcome of a matter do not fall within these definitions. Thus, the confidentiality provision in the non-litigation settlement agreement does not prohibit Ruan from turning over the documents.

Similarly, Ruan includes a confidentiality clause in settlement agreements signed after a plaintiff has begun litigation. The relevant language in these settlement agreements provides that the "releasing parties shall not disclose the terms of this agreement, the facts and circumstances giving rise to this agreement, or the existence of any claim that releasing parties have, or may have, that is subject to the release of claims contained in this agreement, to anyone[.]" Mem. in Supp. of Mot. for Prot. Order at 8. But there is an exception for disclosures made "pursuant to court order[.]"

7

*Id.* The court's January 2020 order required it to turn over the requested information, so Ruan has no basis to claim that the settlement agreement in litigated matters prevents it from doing so.

As a result, the court grants Blue's motion to compel. The court will also grant Ruan's motion for a protective order to the extent that it seeks to limit the use of this information to this litigation. And if, after this order, there remains a valid reason to designate the information as confidential, Ruan may do so.

**C. Attorney's Fees**

The Federal Rules provide that if a court grants a motion compelling discovery, it "must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). But if "the opposing party's nondisclosure, response, or objection was substantially justified" or "other circumstances make an award of expenses unjust[,]" the court must not order payment. Fed. R. Civ. P. 37(a)(5)(A)(ii), (iii). "A legal position is 'substantially justified' if there is a 'genuine dispute' as to proper resolution or if 'a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact.'" *Decision Insights, Inc.* v. *Sentia Grp., Inc.*, 311 F. App'x 586, 599 (4th Cir. 2009) (quoting *Pierce* v. *Underwood*, 487 U.S. 552, 565–66 n.2 (1988)).

There are two reasons why, in most cases, the court would award Blue the fees and costs he incurred in connection with this motion. To begin with, this is the second time that Blue had to come to the court asking for an order compelling the disclosure of the same information. What's more, as discussed above, neither the California Constitution nor the terms of settlement agreements provided a basis to withhold the requested information.

But Ruan's actions were motivated, at least in part, on California's requirement that parties actively resist disclosing information that may be protected by its Constitution. *See* Mem. in Supp. of Mot. for Protective Order at 5 (quoting *Craig* v. *Mun. Court*, 100 Cal. App. 3d 69, 77, 161 Cal. Rptr. 19, 23 (1979)). While Ruan's argument was not persuasive, it was not frivolous. Thus, the court finds that it would be unjust to award fees here and will decline to do so.

**III.    Conclusion**

For all these reasons, the court grants both Ruan's Motion for Protective Order (D.E. 77) and Blue's Motion to Compel (D.E. 72). Within 14 days from the date of entry of this order, Ruan must produce complete responses to Interrogatory 3 about prior lawsuits and claims required by this court's January Order. Blue may not use the information provided in response to Interrogatory 3 for purposes beyond this litigation. Ruan may designate information as confidential if there is, considering this order, a valid basis to do so.

Dated:  July 13, 2020

_____
Robert T. Numbers, II
United States Magistrate Judge