IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Case No. 5:18-cv-00445-M

ANTHONY BLUE, as the Administrator of )
the Estate of James E. Blue, Sr.,          )
                                            )
                        Plaintiff,          )          **OPINION**
                                            )          **AND ORDER**
v.                                          )
                                            )
RANDY L. HILL, RUAN TRANSPORT )
CORP., and AIRGAS USA, LLC,                )
                                            )
                        Defendants.         )

This matter comes before the court on Defendants' Motion for Summary Judgment, filed September

27, 2019 (the "Motion") [DE-46]. For the reasons that follow, the Motion is GRANTED IN PART and

DENIED IN PART.

## I.     Background

Early in the evening on November 23, 2017, Defendant Randy L. Hill was driving a tractor pulling

a trailer on Interstate 85 near Oxford, North Carolina when his tractor-trailer collided with a truck driven

by James E. Blue, Sr. ("Decedent"). [DE-1-5, 12 ¶¶ 21, 26] Decedent died later that evening. [DE-1-5, 12

¶¶ 3, 27]

Plaintiff Anthony Blue, the Administrator of Decedent's estate, filed a complaint in Vance County,

North Carolina Superior Court on August 6, 2018, seeking compensatory and punitive damages in

connection with Decedent's allegedly-wrongful death. [DE-1-5] Plaintiff sued: (1) Hill in his individual

capacity, alleging that Hill's negligence, gross negligence, and/or willful and wanton disregard for

Decedent's safety was a proximate cause of the collision; and (2) Defendants Ruan Transport Co. ("Ruan")

1

and Airgas USA, LLC ("Airgas"), alleging that they are vicariously liable for Hill's conduct.[1] [DE-1-5]

On September 13, 2018, Defendants filed a notice of removal in this court, invoking the court's diversity jurisdiction under 28 U.S.C. § 1332.[2] [DE-1] Defendants answered the complaint on September 19, 2018. [DE-12] In their answer, Defendants admitted that, at the time of the collision: (1) the tractor driven by Hill was owned by Ruan, and that Hill was driving the tractor with the permission and consent of, and while acting within the course and scope of his employment with, Ruan; and (2) Hill's tractor was pulling a trailer owned by Airgas. [DE-12 ¶¶ 11, 16, 25] Defendants generally denied Plaintiff's allegations otherwise, and asserted defenses including, *inter alia*: (1) an allegation that Decedent was contributorily negligent; and (2) a specific denial that Hill had a relationship with Airgas sufficient for the latter to be held vicariously liable for Hill's conduct. [DE-12 at 7–8]

On September 27, 2019, Defendants filed the Motion, seeking summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56"). [DE-46] In support, Defendants argue that they are entitled to judgment as a matter of law because: (1) Decedent was contributorily negligent; (2) Plaintiff cannot forecast sufficient evidence that Defendants were grossly negligent; (3) Plaintiff cannot forecast evidence of conduct sufficient to support a punitive-damages award, or that Ruan or Airgas participated in or condoned any such conduct by Hill; and (4) Plaintiff cannot forecast evidence that Airgas had a relationship with Hill sufficient to hold Airgas vicariously liable for Hill's conduct. [DE-47] In opposition, Plaintiff concedes that he lacks evidence to support an award of punitive damages, but otherwise argues that there exist genuine issues of material fact requiring trial on the issues of: (1) Defendants' negligence; (2) Defendants' gross negligence; (3) Decedent's contributory negligence; and (4) Airgas's relationship

---

[1] Plaintiff also sued Airgas Specialty Products, Inc. in the complaint, but the parties thereafter stipulated to that defendant's dismissal. [DE-11]

[2] Although Defendants' initial notice of removal insufficiently alleged facts necessary to satisfy the court that it has diversity jurisdiction over the dispute [*see* DE-65], Defendants subsequently amended their notice of removal to allege facts sufficient for the exercise of federal jurisdiction. [DE-68]

2

with Hill. [DE-57 at 2–3]  The Motion has been fully briefed and is ripe for adjudication. [*see* DE-74 ¶ 6; DE-83 ¶ 5]

## II.    Legal standards

A party moving for summary judgment on a claim or defense bears the burden of "show[ing] that there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law" on that claim or defense.  Fed. R. Civ. P. 56(a).  Within the meaning of Rule 56: (1) a fact is "material" if a jury's decision regarding the fact's existence or nonexistence "might affect the outcome of the suit under the governing law"; and (2) a dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which [the movant] believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may demonstrate the absence of a genuine dispute as to a material fact by: (1) "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[,]" Fed. R. Civ. P. 56(c)(1)(A); or (2) showing that the record "do[es] not establish the absence or presence of a genuine dispute, or that [the nonmovant] cannot produce admissible evidence to support the fact[,]" Fed. R. Civ. P. 56(c)(1)(B).  Record evidence supporting a motion for summary judgment or an opposition thereto must be proffered in a form that is admissible, or the party must satisfactorily explain the admissible form in which the evidence would be admitted at trial.  Fed. R. Civ. P. 56(c)(2); *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 538–39 (4th Cir. 2015).

The Fourth Circuit has said:

> When the moving party has carried its burden, the nonmoving party must come forward with evidence which shows more than some metaphysical doubt that genuine and material factual issues exist. A mere scintilla of evidence presented by the nonmoving party is insufficient to circumvent summary judgment. Rather, the nonmoving party must convince the court that upon the record taken as a whole[3] a rational trier of fact could find for the nonmoving party.

*Austin v. Clark Equip. Co.*, 48 F.3d 833, 836 (4th Cir. 1995) (internal quotation marks and citations omitted). Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and, pursuant to Rule 56(c), to "designate specific facts showing that there is a genuine issue for trial." *See Celotex*, 477 U.S. at 324 (internal quotation marks omitted). Regarding the court's duty in deciding whether a nonmovant has demonstrated the existence of genuine and material factual issues, the *Anderson* Court said:

> Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . . The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.

477 U.S. at 255. Or as the Fourth Circuit put it another way, the nonmovant is entitled "to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, [and] all internal conflicts in it resolved favorably to him[.]" *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979). However, evidence proffered by the nonmovant that is "merely colorable" or "not significantly probative" of the issues will not defeat an otherwise-meritorious motion for summary judgment. *Anderson*, 477 U.S. at 249–50; *see also Austin*, 48 F.3d at 836 ("A mere scintilla of evidence presented by the nonmoving party is insufficient to circumvent summary judgment."). Moreover, "it is the duty of the court to withdraw the case from the jury when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." *Lovelace v. Sherwin-Williams Co.*, 681 F.2d 230, 241 (4th Cir. 1982)

---

[3] The Court need only consider those parts of the record cited by the parties, but it may consider other materials in the record if it so chooses in the exercise of its discretion. Fed. R. Civ. P. 56(c)(3); *Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 324–25 (4th Cir. 2017).

(quotations omitted).

In sum, where the district court concludes that—based upon the record taken as a whole, when viewed in the light most favorable to the nonmovant as described above—a reasonable jury could render a verdict in favor of the nonmovant, summary judgment must be denied. *Anderson*, 477 U.S. at 248. Where, in light of the same, the court concludes that a jury could not reasonably render a verdict in the nonmovant's favor, summary judgment may be granted. *Id.* at 249–50.

### III.    Analysis

As noted above, Plaintiff has conceded that he lacks evidence sufficient to support an award of punitive damages, and the court accordingly grants Defendants summary judgment on that claim.

Plaintiff argues, however, that there exist genuine disputes as to material facts requiring trial on the questions of whether: (1) Defendants were negligent; (2) Decedent was contributorily negligent; (3) Defendants were grossly negligent; and (4) Airgas had a relationship with Hill sufficient for the imposition of vicarious liability. [DE-57 at 2–3]

Regarding Plaintiff's claims based upon Hill's alleged ordinary negligence, while they have moved for summary judgment on certain defenses that could defeat those claims as a matter of law, Defendants have not moved for summary judgment on those claims themselves; indeed, in their initial brief, Defendants appear to concede that Plaintiff has developed sufficient evidence of Hill's ordinary negligence to require a trial. [*see* DE-47 at 13 ("a jury will be asked to decide if Defendant Hill's actions constitute ordinary negligence")] For the avoidance of doubt, to the extent Defendants intended to affirmatively move for summary judgment on Plaintiff's ordinary-negligence claims, that motion is denied, and because Defendants are not entitled to summary judgment on their asserted defenses to those claims as set forth below, trial is required.

The court will address the remaining issues in turn.

### a. Decedent's contributory negligence

Defendants first argue that the evidence shows that Decedent was driving 15 miles per hour at the time of the collision, and that the collision took place after dark in an area where the posted speed limit was 70 miles per hour.[4] [DE-47 at 3–8; DE-49-1 at 30–31] Defendants argue that Decedent's slow speed was negligent and a proximate cause of the collision as a matter of law and that Decedent was therefore contributorily negligent. [DE-49-1 at 30–31] Plaintiff argues that the question of whether Decedent's speed was unreasonably slow under the circumstances is a genuine dispute as to a material fact that a jury should decide. [DE-57 at 4–9]

The North Carolina Court of Appeals[5] has said:

> [U]nder North Carolina law, a defendant can raise the plaintiff's contributory negligence as an affirmative defense to bar the plaintiff's claim in its entirety. To prove a plaintiff's contributory negligence, the defendant must demonstrate (1) that the plaintiff failed to act with due care and (2) such failure proximately caused the injury. . . . Because a reasonable care standard is used to determine a plaintiff's negligence, the question of contributory negligence is ordinarily one for the jury. However, where the evidence is uncontroverted that a party failed to use ordinary care and that want of ordinary care was at least one of the proximate causes of the injury, summary judgment is appropriate.

*Thorpe v. TJM Ocean Isle Partners LLC*, 223 N.C. App. 201, 207–08, 733 S.E.2d 185, 190 (2012) (internal quotation marks, brackets, and citations omitted). Because its determination is potentially fatal to Plaintiff's claims, the question of whether Decedent was contributorily negligent as Defendants allege concerns a

---

[4] Defendants also argue that Decedent might have suddenly pulled off the shoulder in front of Hill, but concede that the evidence might also support a finding that Decedent had been "traveling in the right travel lane for some distance before impact." [DE-47 at 6–7] Accordingly, because the evidence must be viewed in the light most favorable to the nonmovant in adjudging whether summary judgment is appropriate, *Charbonnages*, 597 F.2d at 414, the court conducts its contributory-negligence analysis as if the evidence shows that Decedent was traveling in the right travel lane for some distance before the collision occurred, the less objectionable of the two fact patterns.

[5] Under the *Erie* doctrine, a federal court sitting in diversity applies (1) the substantive law of the state in which it sits and (2) federal procedural law. *See Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78–79 (1938).

"material" fact within the meaning of Rule 56. *See Anderson*, 477 U.S. at 248. However, the question remains whether the dispute about this material fact is "genuine" within the meaning of Rule 56, i.e., whether the "evidence is such that a reasonable jury could return a verdict for [Plaintiff as the] the nonmoving party" on his claims in light of the materials in the record cited by the parties. *Id.*

Defendants essentially argue that Decedent's slow speed was negligence *per se*, citing to N.C. Gen. Stat. § 20-141(h). [DE-47 at 4]  While that statute sets forth that "[n]o person shall operate a motor vehicle on the highway at such a slow speed as to impede the normal and reasonable movement of traffic except when reduced speed is necessary for safe operation or in compliance with law[,]" N.C. Gen. Stat. § 20-141(h), Defendants have not directed the court's attention to authority standing for the proposition that driving at 15 miles per hour in a 70 mile-per-hour zone under these circumstances was "such a slow speed as to impede the normal and reasonable movement of traffic" as a matter of law.  Because the court's independent research has uncovered no such authority, the court concludes that a reasonable jury could find that Decedent did not violate N.C. Gen. Stat. § 20-141(h), and was not negligent under the circumstances. Defendants are accordingly not entitled to summary judgment based upon the defense of contributory negligence.

Furthermore, even if Decedent's conduct amounted to contributory negligence, Plaintiff has argued in opposition that a jury could nonetheless find Hill liable for Decedent's death under the last-clear-chance doctrine.  [DE-57 at 9–14].  Under the last-clear-chance doctrine, a contributorily-negligent plaintiff may sustain his claim by proving:

    (1)    that the plaintiff negligently placed himself in a position of helpless peril;

    (2)    that the defendant knew or, by the exercise of reasonable care, should have discovered the plaintiff's perilous position and his incapacity to escape from it;

    (3)    that the defendant had the time and ability to avoid the injury by the exercise of reasonable care;

<div style="margin-left: 2em;">

(4)      that the defendant negligently failed to use available time and means to avoid injury to the plaintiff[;] and

(5)      as a result, the plaintiff was injured.

</div>

*Outlaw v. Johnson*, 190 N.C. App. 233, 238, 660 S.E.2d 550, 556 (2008). When viewed in the light most favorable to Plaintiff, Hill's testimony that he (1) had 12 seconds between the time he first saw Decedent's truck and the time of the collision but (2) left his tractor-trailer in cruise control and did not apply his brakes at all before colliding with Decedent [DE-59-12 at 197–99] is sufficient for a reasonable jury to find the elements of the last-clear-chance doctrine proven sufficiently to sustain a verdict in Plaintiff's favor, even were the jury to also find that Decedent's slow speed amounted to contributory negligence.[6]

For these reasons, the court rejects Defendants' argument that they are entitled to summary judgment based upon Decedent's alleged contributory negligence.

### b. *Defendants' gross negligence*

Defendants next argue that Plaintiff cannot forecast evidence sufficient for a reasonable jury to find

---

[6] Defendants argue that Plaintiff cannot establish the elements of the last-clear-chance doctrine because Decedent might have taken steps to avoid the collision, and therefore was not in helpless peril. [*see* DE-60 at 5–7] Defendants cite cases in support that are factually distinguishable, because the records in those cases showed that the plaintiffs seeking to invoke the doctrine: (1) were aware of the peril they faced; and (2) could have, but did not, take steps to protect themselves from that peril. *See Clodfelter v. Carroll*, 261 N.C. 630, 635–36, 135 S.E.2d 636, 639 (1964) (no helpless peril where plaintiff testified to seeing defendant's car coming toward her while walking on the highway but did not move off of highway); *Stephens v. Mann*, 50 N.C. App. 133, 137, 272 S.E.2d 771, 773–74 (1980) (no helpless peril where plaintiff testified that she got into the back of a truck to hold down unsecured furniture and did not hold on to the truck once it began moving).

When viewed in the light most favorable to Plaintiff, the record in this case shows that Decedent was traveling on the highway at a slow speed while Hill approached him from behind in the same lane at a high speed, and does not indicate that Decedent: (1) was aware of Hill's approach; or (2) was able to take some step to protect himself like the plaintiffs in *Clodfelter* and *Stephens*, but did not do so. [DE-49-1 at 29–31; DE-59-1] Defendants do not cite any authority standing for the proposition that, as a matter of law, a motorist is immune from the otherwise-applicable last-clear-chance doctrine because the motorist he approaches from behind might have been aware of his approach and might have been able to avoid the ensuing collision. Because the court's independent research has uncovered no such authority, the court rejects Defendants' argument.

that Defendants were grossly negligent. [DE-47 at 8–15] Plaintiff argues in opposition that this question is also properly submitted to a jury. [DE-57 at 14–22]

Under North Carolina law, "a plaintiff's contributory negligence does not bar recovery from a defendant who is grossly negligent."[7] *McCauley v. Thomas*, 242 N.C. App. 82, 89, 774 S.E.2d 421, 426 (2015). Because its determination is potentially dispositive as to Plaintiff's right to relief, the question of whether Defendants were grossly negligent concerns a "material" fact within the meaning of Rule 56, *see Anderson*, 477 U.S. at 248, and the question for the court's determination is whether the dispute about this material fact is "genuine" within the meaning of Rule 56, i.e., whether a reasonable jury could find Defendants were grossly negligent in light of the materials in the record cited by the parties. *Id.*

The North Carolina Supreme Court has distinguished between ordinary negligence and gross negligence as follows:

> [T]his Court, in references to *gross negligence*, has used that term in the sense of wanton conduct. Negligence, a failure to use due care, *be it slight or extreme*, connotes inadvertence. Wantonness, on the other hand, connotes *intentional wrongdoing*. Where malicious or wilful injury is not involved, wanton conduct must be alleged and shown to warrant the recovery of punitive damages. Conduct is wanton when in conscious and intentional disregard of and indifference to the rights and safety of others.

---

[7] Plaintiff's complaint only mentions gross negligence within its count seeking punitive damages, which as mentioned above Plaintiff has abandoned. Although it is unclear from the parties' briefs, because Plaintiff has brought a claim alleging ordinary negligence, and because proving Defendants' negligence to the heightened gross-negligence standard would not be an independent basis for any additional award, the court understands (1) Plaintiff to be arguing that the question of Defendants' gross negligence should be submitted to the jury in order to defeat Defendants' asserted defense of Decedent's contributory negligence and (2) Defendants to be arguing that Plaintiff cannot forecast such gross negligence as a matter of law. *See* Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense — *or the part of each claim or defense* — on which summary judgment is sought.") (emphasis added)); *Williams v. Dimensions Health Corp.*, 952 F.3d 531, 536 (4th Cir. 2020) (considering a defense to a defense on summary judgment).

Accordingly, the court's holding that Defendants are entitled to summary judgment on Plaintiff's gross-negligence theory means that the jury will not be given an instruction regarding gross negligence at trial, and that if the jury finds that Decedent was contributorily negligent, Plaintiff will not be able to avoid the application of that defense by proving gross negligence (as he could, e.g., by proving the elements of the last-clear-chance doctrine).

Thus, the difference between the two is not in degree or magnitude of inadvertence or carelessness, but rather is intentional wrongdoing or deliberate misconduct affecting the safety of others. An act or conduct rises to the level of gross negligence when the *act* is done purposely and with knowledge that such act is a breach of duty to others, i.e., a *conscious* disregard of the safety of others. An act or conduct moves beyond the realm of negligence when the *injury or damage* itself is intentional.

*Yancey v. Lea*, 354 N.C. 48, 53, 550 S.E.2d 155, 158 (2001) (emphases in original) (citation omitted). The Fourth Circuit more recently interpreted *Yancey* and other North Carolina cases as "requir[ing] a showing of intentional wrongdoing in order to sustain a claim of gross negligence" under North Carolina law. *FDIC v. Rippy*, 799 F.3d 301, 314 (4th Cir. 2015).

*Yancey* is instructive. In *Yancey*, like here, allegations of gross negligence were levied against the driver of a tractor-trailer who allegedly caused a rear-end collision with another motor vehicle by unsuccessfully attempting to pass the vehicle. 354 N.C. at 49–51, 550 S.E.2d at 156. The *Yancey* court noted that in motor-vehicle-negligence cases in North Carolina courts, "the gross negligence issue has been confined to circumstances where" the evidence tended to show that the driver was (1) intoxicated, (2) driving at excessive speeds, or (3) engaged in a racing competition. *Id.* at 53–54, 550 S.E.2d at 158. The *Yancey* court characterized the plaintiff's argument in that case as follows:

[P]laintiff basically contends that [the defendant], rather than slowing and stopping his tractor-trailer behind decedent's vehicle, as [the defendant] acknowledged he could have done, instead elected to pass and thereby chose to ignore the substantial risk of severe injury or death to others. Plaintiff asserts that this was a conscious, mental process on the part of [the defendant], coupled with the substantial likelihood of severe injury or death because of the size and weight of his truck, and thus defendant's conduct was elevated beyond simple or ordinary negligence to a reckless disregard.

*Id.* at 54–55, 550 S.E.2d at 159. The court rejected the plaintiff's argument. Noting that "the strongest evidence against [the defendant] . . . was the evidence of decedent's operative left-turn signal and [the defendant's] acknowledgment that he chose to pass, in a passing zone, although he could have stopped behind decedent's automobile and waited to determine what maneuver she was going to make[,]" the

*Yancey* court held that such conduct "[a]t most . . . discloses a breach of [the defendant]'s duty to exercise ordinary care" and "falls substantially short of manifesting any wicked purpose, or willful and wanton conduct in conscious and intentional disregard of the rights and safety of others." *Id.* at 56–57, 550 S.E.2d at 160. Because there was no evidence that the defendant was intoxicated, driving at excessive speed, or engaged in a racing competition, the court accordingly held that gross negligence was not properly submitted to the jury, because "[t]o conclude otherwise . . . would substantially blur the distinction this Court has established between gross and ordinary negligence." *Id.*

Plaintiff has forecast no evidence tending to show that Hill was intoxicated, driving at excessive speed, or engaged in a racing competition at any time. Plaintiff argues, however, that he can show gross negligence through: (1) Hill's admission that he used his cellphone while driving on the day of the collision, in violation of Ruan policy and federal law [DE-57 at 15–17]; and (2) the fact that Hill failed to avoid the collision while he was aware of a Ruan policy manual that sets forth that Ruan drivers should look out for obstacles, change lanes safely, and adjust their speed for conditions [DE-57 at 18–22].

Both of these alleged facts fail to establish a genuine dispute as to gross negligence. Regarding the first argument, a reasonable jury could not find that Hill's cellphone use—regardless of whether it violated any policy or law—was a proximate cause of the collision with Decedent. "A defendant is liable for his negligence if the negligence is the proximate cause of injury to a person to whom the defendant is under a duty to use reasonable care." *Hart v. Ivey*, 332 N.C. 299, 305, 420 S.E.2d 174, 178 (1992). In the light most favorable to Plaintiff, the evidence shows that Hill last used his cellphone 12 minutes prior to his collision with Decedent. [DE-49-2 at 177–80] It would stretch the imagination beyond reason to conclude that using a cellphone 12 minutes prior to a motor-vehicle collision was a cause of the collision. And Plaintiff's expert testimony regarding whether an abstract person can be distracted following cellphone use is not evidence supporting an allegation that Hill was grossly negligent in the absence of evidence that Hill

himself was actually distracted leading up to the collision. Plaintiff's argument that a jury could infer that Hill was so distracted rests upon mere conjecture, and cannot defeat summary judgment. *Lovelace*, 681 F.2d at 241.

Plaintiff's second argument fails because Hill's awareness of a policy manual setting forth general guidelines for safe driving does not support gross negligence in the absence of evidence that Hill intentionally deviated from those guidelines. While the manual set forth that Ruan drivers should (1) look out for obstacles, (2) change lanes safely, and (3) adjust speed for conditions, the record viewed in the light most favorable to Plaintiff shows that Hill (1) observed Decedent's vehicle 12 seconds before the collision [DE-59-12 at 197–99], (2) did not change lanes because he determined that it was unsafe to do so [DE-59-12 at 184], and (3) was driving below the posted speed limit leading up to the collision [DE-59-1]. While the record shows that Hill did not deactivate his cruise control or brake leading up to the collision—which is sufficient for a reasonable jury to conclude that Hill was ordinarily negligent—the record does not show that Hill did so intentionally in conscious disregard of the rights and safety of Decedent, but instead shows that Hill was unsuccessfully attempting to change lanes to avoid Decedent's vehicle. [DE-59-12 at 184] This is the same conduct that the *Yancey* court held was insufficient to sustain an allegation of gross negligence, *Yancey*, 354 N.C. at 57, 550 S.E.2d at 160, and the court rejects Defendants' second argument for the same reason.

Accordingly, the court concludes that Defendants are entitled to summary judgment on the gross-negligence issue.

### c. *Airgas's vicarious liability*

Finally, Defendants argue that Plaintiff cannot forecast evidence that Airgas had a relationship with Hill sufficient to hold Airgas vicariously liable for Hill's conduct. [DE-47 at 22–30] Plaintiff argues in opposition that (1) North Carolina law precludes summary judgment based upon Airgas's admissions and

12

(2) he has presented sufficient evidence to take the question of the nature of Hill's relationship with Airgas to the jury. [DE-57 at 22–28]

Plaintiff sued Airgas invoking the doctrine of *respondeat superior*, alleging that Hill was acting as Airgas's employee at the time of the collision, and that Airgas was legally responsible for Hill's conduct as a result. [DE-1-5 at 7–8] "Under the doctrine of *respondeat superior*, an employer may be held vicariously liable for the torts of its employee who is acting within the scope of his employment." *Griffith v. Glen Wood Co.*, 184 N.C. App. 206, 215, 646 S.E.2d 550, 557 (2007). Because its determination is potentially dispositive as to its claims against Airgas, the question of whether Hill was acting as Airgas's employee at the time of the collision concerns a "material" fact within the meaning of Rule 56, *see Anderson*, 477 U.S. at 248, and the question for the court's determination is whether the dispute about this material fact is "genuine" within the meaning of Rule 56, i.e., whether a reasonable jury could find that Hill was acting as Airgas's employee at the time of the collision in light of the materials in the record cited by the parties. *Id.*

When the doctrine of *respondeat superior* has been invoked by one seeking to hold an employer vicariously liable for the acts of a person working for the employer, North Carolina courts have distinguished between employees and independent contractors: while an employer is liable for the negligent acts of its employees, it is generally not liable for the negligent acts of independent contractors. *Johnson v. News & Observer Publ'g Co.*, 167 N.C. App. 86, 88, 604 S.E.2d 344, 346 (2004), *disc. review denied*, 359 N.C. 281, 609 S.E.2d 773 (2005). The North Carolina Supreme Court has defined an independent contractor as "one who exercises an independent employment and contracts to do certain work according to his own judgment and method, without being subject to his employer except as to the result of his work." *Youngblood v. N. State Ford Truck Sales*, 321 N.C. 380, 384, 364 S.E.2d 433, 437 (1988). In determining whether a worker is an employee or an independent contractor, the North Carolina Supreme Court has identified a list of non-exclusive factors to be considered, including whether the worker:

13

(a) is engaged in an independent business, calling, or occupation;

(b) is to have the independent use of his special skill, knowledge, or training in the execution of the work;

(c) is doing a specified piece of work at a fixed price or for a lump sum or upon a quantitative basis;

(d) is not subject to discharge because he adopts one method of doing the work rather than another;

(e) is not in the regular employ of the other contracting party;

(f) is free to use such assistants as he may think proper;

(g) has full control over such assistants; and

(h) selects his own time.

*Hayes v. Bd. of Trs. of Elon Coll.*, 224 N.C. 11, 16, 29 S.E.2d 137, 140 (1944). The *Hayes* court also said:

> The presence of no particular one of these *indicia* is controlling. Nor is the presence of all required. They are considered along with all other circumstances to determine whether in fact there exists in the one employed that degree of independence necessary to require his classification as independent contractor rather than employee.

*Id.* The key consideration, or "vital test[,]" is whether "the employer has or has not retained the right of control or superintendence over the contractor or employee as to details." *Id.* at 15, 29 S.E.2d at 140; *see Johnson*, 167 N.C. App. at 89–90, 604 S.E.2d at 347 (applying *Hayes* in determining the applicability of *respondeat superior*).

Defendants premise their argument primarily upon language found within the contract governing Airgas and Ruan's relationship,[8] which generally sets forth that Ruan was to act as an independent contractor of Airgas and that Ruan's drivers could "[i]n no event . . . be deemed to be employees of" Airgas.

---

[8] "[A] principal is liable for the torts of his authorized subagent to the same extent as he is liable for the torts of his primary agent[.]" *Stacy v. Jedco Constr.*, 119 N.C. App. 115, 121, 457 S.E.2d 875, 879 (1995).

[DE-47 at 22–30; DE-49-11 at ¶ 11 ("Independent Contractor Status")]  While not dispositive, this contractual language is some evidence that Hill was an independent contractor of Airgas.  *See Johnson*, 167 N.C. App. at 91, 604 S.E.2d at 348.  In response, Plaintiff argues that Airgas is not entitled to summary judgment because (1) North Carolina statutory law precludes summary judgment based upon Airgas's admissions and (2) Plaintiff has in any event has presented sufficient evidence to take the question of Hill's status to the jury.  [DE-57 at 22–28]

The North Carolina Motor Vehicle Act, North Carolina General Statutes Chapter 20 (the "Act"), contains a section setting forth that in a wrongful-death action arising out of a collision involving motor vehicles: (1) proof of ownership of a motor vehicle is *prima facie* evidence that the vehicle "was being operated and used with the authority, consent, and knowledge of the owner" at the time of the collision, N.C. Gen. Stat. § 20-71.1(a); and (2) proof of registration of the vehicle in the name of an entity is *prima facie* evidence "of ownership [by the entity] and that such motor vehicle was [at the time of the collision] being operated by and under the control of a person for whose conduct the owner was legally responsible, for the owner's benefit, and within the course and scope of his employment[,]" N.C. Gen. Stat. § 20-71.1(b). Under the Act, a motor vehicle is defined in relevant part as including "every vehicle designed to run upon the highways which is pulled by a self-propelled vehicle."  N.C. Gen. Stat. § 20-4.01(23).  North Carolina courts have interpreted N.C. Gen. Stat. § 20-4.01(23) to include trailers like Airgas's.  *See Lupo v. Powell*, 44 N.C. App. 35, 38, 259 S.E.2d 777, 779 (1979) (rejecting an argument that a "single-axle trailer" is not a motor vehicle within the meaning of N.C. Gen. Stat. § 20-4.01(23)).

In Defendants' answer, Airgas admitted that it "was the registered owner of the [trailer] that was involved in the accident at issue in this case[,]" and that Hill was pulling the trailer at the time of the collision.  [DE-12 ¶ 16, 22]  Because Plaintiff has directed the court's attention to these admissions, Plaintiff has presented *prima facie* evidence under N.C. Gen. Stat. § 20-71.1 that Airgas was legally responsible for

15

Hill's conduct at the time of the collision, which is sufficient under North Carolina law to defeat a motion for summary judgment arguing that *respondeat superior* does not apply, regardless of any evidence that could be proffered by Defendants. *DeArmon v. B. Mears Corp.*, 312 N.C. 749, 759, 325 S.E.2d 223, 230 (1985) ("when a plaintiff on an agency issue relies entirely on the prima facie case created by [N.C. Gen. Stat. § 20-71.1] and defendant offers positive evidence which, if believed, would demonstrate the absence of agency . . . the only question *for the jury* is whether it believes the contrary evidence." (emphasis added)).

However, Defendant cites to *Neal v. Wayne Curtis Paradise*, No. 7:15-CV-261-FL, 2017 U.S. Dist. LEXIS 36880 (E.D.N.C. Mar. 15, 2017), where Judge Flanagan granted summary judgment to a defendant motor-vehicle owner because the plaintiff relied exclusively upon N.C. Gen. Stat. § 20-71.1's statutory presumption in opposing the defendant's motion for summary judgment brought under Rule 56. In *Neal*, Judge Flanagan held that N.C. Gen. Stat. § 20-71.1 and the cases applying it set forth procedural rules, rather than substantive rules, for purposes of applying *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938) (setting forth the rule that federal courts exercising diversity jurisdiction under 28 U.S.C. § 1332 must apply state substantive law, but apply federal procedural law). *Id.* at *9–10. Because these state procedural rules, which allow a plaintiff to survive an otherwise-meritorious motion for summary judgment with mere proof of ownership or registration, conflict with Rule 56, which requires a nonmovant to respond to such a motion "with evidence which shows . . . that genuine and material factual issues exist" sufficient to "convince the court that upon the record taken as a whole a rational trier of fact could find for the nonmoving party[,]" *Austin*, 48 F.3d at 836, Judge Flanagan concluded that N.C. Gen. Stat. § 20-71.1's presumption is inapplicable in federal court where the Rule 56 movant has met its burden of showing the absence of a genuine dispute as to whether a party was an employee for purposes of *respondeat superior*. *Id.* at *8–12 (applying *Erie*). In such a case, she reasoned, the nonmovant is required to present *evidence* sufficient for a reasonable jury to find in his favor, or summary judgment may be entered against him on that score. *Id.*

16

Defendants argue that they have met their initial burden of showing the absence of a genuine dispute as to the material fact of whether Hill was Airgas's employee at the time of the collision and that, like the plaintiff in *Neal*, Plaintiff has improperly relied upon N.C. Gen. Stat. § 70-1.1 to avoid summary judgment. [DE-60 at 7–10]

This case is distinguishable from *Neal*, however, because Plaintiff here has not relied *exclusively* upon N.C. Gen. Stat. § 20-71.1 to survive summary judgment, as did the *Neal* plaintiff. Plaintiff has directed the court's attention to affirmative evidence indicating that Airgas controlled a number of details regarding Hill's work at the time of the collision, including the deposition transcript of Ruan's Federal Rule of Civil Procedure 30(b)(6) designee, who agreed that "Airgas determines where [Ruan's drivers] go, what they pick up, what they drop off, what stops they make, and even the route that they take[.]" [DE-57 at 25–28, DE-59-18 at 43–53] While the court can imagine other details that Airgas might not have controlled, to control a truck-driver's itinerary in such fashion is to determine many of the details of how the truck driver executes the task for which he was hired, and in the light most favorable to Plaintiff, the testimony proffered is some evidence of retention of "the right of control or superintendence over the contractor or employee as to details." *Hayes*, 224 N.C. at 15, 29 S.E.2d at 140.

Although a finding that Hill was a mere independent contractor would also be reasonable, the court therefore concludes that the record contains evidence sufficient to permit a panel of reasonable jurors to find that Hill was Airgas's employee for purposes of the application of the doctrine of *respondeat superior*, and denies Defendants' argument that Airgas cannot be held vicariously liable for this reason.

## IV.    Conclusion

For the reasons stated above, the Motion is GRANTED IN PART and DENIED IN PART.

SO ORDERED this the ___11th___ day of August, 2020.

Richard E Myers II

RICHARD E. MYERS II
UNITED STATES DISTRICT JUDGE